**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

J FOGACA INVESTCO INC.,

Plaintiff,

v.

CISION LTD., KEVIN AKEROYD, MARK M. ANDERSON, PHILIP A. CANFIELD, L. DYSON DRYDEN, MARK D. EIN, DAVID KRANTZ, STEPHEN P. MASTER, SUSAN VOBEJDA, AND STUART YARBROUGH,

Defendants.

**CASE NO.:**

**COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS**

Plaintiff J Fogaca InvestCo Inc. ("Plaintiff"), by its undersigned attorneys, alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff, which are based on personal knowledge.

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff, a stockholder of Cision Ltd. ("Cision" or the "Company") brings this action against the members of Cision Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a) & 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, and 17 C.F.R. § 240.14a-9, arising out of their attempt to sell the Company to an affiliate of Platinum Equity ("Platinum").

2. On October 22, 2019, the Company announced that it had entered into a definitive agreement and plan of merger ("Merger Agreement"), by which the Company will be acquired by MJ23 UK Acquisition Limited ("MJ23"), an affiliate of Platinum (the "Proposed Transaction").

Under the terms of the Merger Agreement, Cision stockholders will receive $10.00 in cash in exchange for each share of Cision common stock (the "Merger Consideration").

3. On December 3, 2019, the Company filed a Definitive Proxy Statement on Form DEFM14A (the "Proxy") with the United States Securities & Exchange Commission. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding the Company's financial projections, and the financial analysis performed by the Company's financial advisors, Rothschild & Co US Inc. ("Rothschild") and Centerview Partners LLC.

4. Without additional information the Proxy is materially misleading in violation of federal securities laws.

5. By unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Proxy was materially false and/or misleading. The Proxy is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

6. The stockholder vote is currently scheduled for December 19, 2019 at 9:30 a.m. Eastern Standard Time (the "Stockholder Vote"). Under the Merger Agreement, following a successful Stockholder Vote, the Proposed Transaction will be consummated.

7. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants (collectively identified below) from conducting the Stockholder Vote on the Proposed Transaction unless and until the material information discussed below is disclosed to the holders of Cision common stock, or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

9. Personal jurisdiction exists over each Defendant either because each has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

10. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District, as the Company's common stock is listed and traded on the New York Stock Exchange within this District; and (ii) Defendants have received substantial compensation in this District by accessing the capital markets active in this District.

## PARTIES AND RELEVANT NON-PARTIES

11. Plaintiff is, and has been at all relevant times, the owner of Cision common stock.

12. Defendant Cision is a corporation organized and existing under the laws of the Cayman Islands. It maintains principal executive offices at 130 East Randolph Street, 7th Floor, Chicago, Illinois 60601. Cision provides earned media software and services to public relations and marketing communications professionals. Cision common stock is listed for trading on the New York Stock Exchange under the ticker symbol "CISN."

13. Defendant Mark M. Anderson ("Anderson") serves as the Company's Chairman of the Board. Anderson is a Managing Director of GTCR LLC ("GTCR"). A fund of GTCR, GTCR Investment X AIV Ltd. Is the sole shareholder of Canyon Partners, Ltd., the general partner of

Canyon Holdings (Cayman), L.P. ("Cision Owner"), the 34% owner of the Company's common stock.

14. Defendant Kevin Akeroyd has served as the Company's President and Chief Executive Officer since August 2016.

15. Defendant Philip A. Canfield is a director of the Company and a Managing Director of GTCR.

16. Defendant L. Dyson Dryden has served as a director of the Company at all relevant times.

17. Defendant Mark D. Ein has served as a director of the Company at all relevant times.

18. Defendant David Krantz has served as a director of the Company at all relevant times.

19. Defendant Stephen P. Master has served as a director of the Company at all relevant times. Master is a Vice President at GTCR.

20. Defendant Susan Vobejda has served as a director of the Company at all relevant times.

21. Defendant Stuart Yarbrough has served as a director of the Company at all relevant times.

22. Defendants referenced in ¶¶ 13 through 21 are collectively referred to as Individual Defendants and/or the Board.

**FURTHER SUBSTANTIVE ALLEGATIONS**

23. On October 22, 2019, Cision issued a press release announcing the Proposed Transaction. The Press Release read in relevant part:

CHICAGO, Oct. 22, 2019 /PRNewswire/ -- Cision Ltd. (NYSE: CISN), a leading global provider of software and services to public relations and marketing communications professionals, today announced that it has entered into a definitive agreement to be acquired by an affiliate of Platinum Equity in an all cash transaction valued at approximately $2.74 billion.

Under the terms of the agreement, which has been unanimously approved by the members of Cision Ltd.'s board of directors, an affiliate of Platinum Equity will acquire all of the outstanding ordinary shares of Cision Ltd. for $10.00 per share in cash. The purchase price represents a 34% premium over Cision Ltd.'s 60-day volume-weighted average price ended on October 21, 2019.

A special meeting of Cision Ltd.'s shareholders will be held as soon as practicable following the filing of a definitive proxy statement with the U.S. Securities and Exchange Commission ("SEC") and subsequent mailing to its shareholders. Certain affiliates of GTCR, collectively holding approximately 34% of the outstanding shares of Cision Ltd., have entered into a voting agreement committing them to, among other things, vote in favor of adopting the acquisition agreement. The proposed transaction is expected to close in the first quarter of 2020 and is subject to approval by Cision Ltd.'s shareholders, along with the satisfaction of customary closing conditions and antitrust regulatory approvals, as necessary. Upon completion of the acquisition, Cision Ltd. will become wholly owned by an affiliate of Platinum Equity.

Cision Ltd. may solicit alternative acquisition proposals from third parties during a "go-shop" period from the date of the agreement until November 12, 2019. There is no guarantee that this process will result in a superior proposal, and the agreement provides Platinum Equity with a customary right to match a superior proposal and termination fee if a superior proposal is accepted. Cision Ltd. does not intend to disclose developments with respect to the solicitation process unless and until the company determines such disclosure is appropriate.

"This transaction will provide shareholders with immediate and substantial cash value, while also providing us with a partner that shares in our commitment to customers and employees and can add strategic and operational value," said Kevin Akeroyd, Cision's Chief Executive Officer. "Based on our extensive engagement with Platinum over the past several months, we are confident that Platinum's support will enable Cision to execute on its strategy and next phase of growth."

Commenting on the transaction, Platinum Equity Partner Jacob Kotzubei said: "Cision has a long history of leadership providing software and services to public relations and marketing communications professionals and has developed a growing portfolio of earned media management offerings for the world's leading brands. Platinum looks forward to nurturing Cision's core business, supporting and anticipating the diverse needs of the company's

> customers, and driving new opportunities for innovation. As a private company, Cision will be able to make strategic investments for sustainable and profitable growth, while remaining agile and focused on operational excellence. We are excited to partner with Cision's management team as it embarks on this new chapter."
>
> Cision Ltd. will file its quarterly report on Form 10-Q reporting its third quarter financial results but does not intend to host a quarterly earnings call.
>
> Financing & Advisors
>
> Equity financing will be provided by investment funds managed, advised or sponsored by Platinum Equity. Platinum Equity has secured committed debt financing for the transaction from Bank of America Merrill Lynch.
>
> Rothschild & Co is serving as lead financial advisor to Cision and its Board of Directors. Centerview Partners LLC and Deutsche Bank Securities Inc. are also acting as financial advisors to Cision. Kirkland & Ellis LLP is acting as legal counsel to Cision, and Gibson, Dunn & Crutcher LLP is acting as M&A legal counsel and Willkie Farr & Gallagher LLP is acting as financing legal counsel to Platinum Equity.
>
> For further information regarding the terms and conditions contained in the definitive merger agreement, please see Cision Ltd.'s Current Report on Form 8-K, which will be filed in connection with this transaction.

**The Proxy Misleads Cision Stockholders by Omitting Material Information**

24. On December 3, 2019, the Company filed the materially misleading and incomplete Proxy with the SEC. Designed to convince Cision stockholders to vote in favor of the Proposed Transaction, the Proxy is rendered misleading by the omission of critical information concerning the Company's financial projections, Rothschild's financial analyses, and the terms of confidentiality agreements that currently bar potential acquirers from submitting proposals superior to the Proposed Transaction.

***The Recommendation Statement Fails to Disclose Material Portions of the Financial Projections Relied Upon by the Board and Its Financial Advisors***

25. The summary of the financial analyses conducted by the Company's financial advisor, Rothschild, states that the advisor reviewed "certain internal financial and operating

information with respect to the business, operations and prospects of the Company, including the October 2019 Projections set forth under the heading "—Certain Unaudited Prospective Information" (the "Forecasts") and certain internal analyses relating to the net operating losses of the Company" in preparing its financial analyses.

26. Similarly, the Proxy states that Centerview reviewed "certain internal information relating to the business, operations, earnings, cash flow, assets, liabilities and prospects of the Company, including certain financial forecasts, analyses and projections relating to the Company prepared by management of the Company and furnished to Centerview by the Company for purposes of Centerview's analysis."

27. Thus, the cash flow projections that formed the basis for these Discounted Cash Flow Analyses were management's best estimates of the Company's future results, and did not originate from some other source.

28. In preparing its *Discounted Cash Flow Analysis* of the Company, Rothschild used the "estimated unlevered, after-tax free cash flows that the Company was forecasted to generate from the three months ended December 31, 2019 through the end of fiscal year 2026 based on the Forecasts provided by the management of the Company." Unlevered, after-tax free cash flows for the terminal period were defined as "net operating profit after taxes ("NOPAT") after application of the illustrative range of growth rates described above, less increases in net working capital, plus depreciation and amortization, plus increases in deferred revenue, less capital expenditures, less capitalized software."

29. In preparing its *Discounted Cash Flow Analysis* of the Company, Centerview based the analysis "on the Forecasts and the calculations of after-tax unlevered free cash flows set forth

under the heading '— Certain Unaudited Prospective Information.'" The Proxy does not define the after-tax unlevered free cash flows used by Centerview.

30. However, in the disclosed "Certain Unaudited Prospective Information," the Proxy entirely omits the calculated or uncalculated unlevered after-tax free cash flows. Instead, the Proxy discloses the following irrelevant line items for three sets of projections, the April 2019 Projections, the September 2019 Projections, and the October 2019 Projections: Revenue, Adjusted EBITDA, Adjusted EBITDA less capital expenditures and capitalized software, depreciation & amortization, stock-based compensation, acquisition related costs & expenses, capital expenditures, capitalized software, change in deferred revenue and change in net working capital.

31. These disclosures provide Cision stockholders with no actual information regarding the unlevered free cash flows used by Centerview or Rothschild, particularly because Centerview's metric of unlevered free cash flow is left undefined, and Rothschild's metric of NOPAT is undisclosed.

32. Moreover, the disclosed projections do not provide a fair proxy by which one could assess the Company's future cash flows. The Company is carrying roughly $1.26 billion in long term debt, and $74 million in deferred tax liabilities as of September 30, 2019. As such, Adjusted EBITDA and net earnings figures will almost certainly depart significantly from unlevered free cash flow figures for the Company, and in a manner that would be essentially impossible for non-insiders to evaluate with confidence.

33. The above-referenced omitted information relating to the Company's financial projections, and particularly the Company's projected unlevered free cash flows, would, if

disclosed, significantly alter the total mix of information available to Cision's stockholders regarding the future value of the Company.

34. Thus, the omission of this projected financial information serves to prevent Company stockholders from evaluating the fairness analysis conducted by Rothschild and Centerview, or to perform their own valuation of the Company.

***Material Omissions Concerning the Financial Analyses of Rothschild and Centerview***

35. The Proxy describes the Discounted Cash Flow Analyses performed by Rothschild and Centerview. However, the description of these analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Cision's stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on the fairness opinions of Rothschild and Centerview in determining how to cast their vote on the Proposed Transaction. This omitted information, if disclosed, would significantly alter the total mix of information available to Cision stockholders.

36. With respect to Rothschild's *Discounted Cash Flow Analysis*, the Proxy fails to disclose (i) the calculated terminal values of Cision's unlevered free cash flows; (ii) the Company's net operating losses or other tax benefits used when calculating an additional $0.25 per share in the reference range; and (iii) Cision's fully diluted shares outstanding.

37. With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy fails to disclose (i) the calculated terminal values of Cision's unlevered free cash flows; (ii) the Company's net operating losses or other tax benefits used when calculating an additional $0.25 per share in the reference range, identical to Rothschild's conclusion regarding these tax benefits; and (iii) Cision's fully diluted shares outstanding.

38. Such information is material to Cision stockholders as a reasonable Cision stockholder would find it material and important to their voting decision whether parties that had previously been interested in a potential acquisition of the Company are now foreclosed from submitting superior proposals.

39. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

## COUNT I

### Claim for Violation of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Cision

63. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

64. The Individual Defendants disseminated the false and misleading Proxy, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Cision is liable as the issuer of these statements.

65. The Proxy was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy.

66. The Individual Defendants were at least negligent in filing the Proxy with these materially false and misleading statements.

67. The omissions and false and misleading statements in the Proxy are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as

significantly altering the total mix of information made available in the Proxy and in other information reasonably available to stockholders.

68. The Proxy is an essential link in causing Plaintiff and the Company's stockholders to approve the Proposed Transaction.

69. By reason of the foregoing, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

70. Because of the false and misleading statements in the Proxy, Plaintiff is threatened with irreparable harm.

**COUNT II**

**Claim for Violation of Section 20(a) of the Exchange Act Against the Individual Defendants**

71. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

72. The Individual Defendants acted as controlling persons of Cision within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Cision and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are false and misleading.

73. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

74. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein and exercised the same. The Proxy contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy.

75. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the Exchange Act.

76. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' conduct, Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that Defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

Dated: December 4, 2019

Respectfully submitted,

By: /s/ *William Fields*
William Fields
**LEVI & KORSINSKY, LLP**
55 Broadway, 10th Floor
New York, NY 10006
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: wfields@zlk.com

*Attorneys for Plaintiff*

**LEVI & KORSINSKY, LLP**
Donald J. Enright (to be admitted *pro hac vice)*
Elizabeth K. Tripodi (to be admitted *pro hac vice)*
1101 30th Street, N.W., Suite 115
Washington, DC 20007
Tel: (202) 524-4290
Fax: (202) 333-2121
Email: denright@zlk.com
etripodi@zlk.com

*Attorneys for Plaintiff*